We're ready for that case. We have David Coffin for Emma Stanley. Go ahead. Good morning, your honors. May it please the court. This appeal represents a narrow question. Can the government use the duty of consistency to extinguish Emma Stanley's vested ownership interest in arts investments when the government failed to prove detrimental reliance? The answer is no. The government's theory assumes that an omission on a form 8857 caused the IRS to grant innocent spouse relief. The government introduced no evidence proving that proposition. I want to first talk about how the government could have easily proven reliance in this case. The elements of the duty of consistency. I'm sorry, I guess I didn't hear you. You said the government offered no evidence of what? Proving reliance in this case, your honor. The elements of the duty of consistency are a representational report by a taxpayer relied upon by the government followed by an attempt by the taxpayer to change the representation which would cause harm to the government. Even if there was representation in this case, the government fails to prove the second element, reliance. The government produced no evidence of reliance. The evidence should have consisted of, but was not provided, included an administrative file from the IRS, IRS testimony, either from IRS personnel at the Innocent Spouse Unit, no appeals file or testimony from an appeals officer, or no IRS counsel file who would have been involved in this case. What was the basis for her getting innocent spouse relief? Your honor, there are a myriad of factors the IRS looks at in determining whether relief should be granted, and those are set out in Revenue Procedure 2013-34, your honor. And there's a ton of factors they can look at. And let me read those real quick to you. Marital status, economic hardship, knowledge or reason to know, legal obligation, significant benefit, compliance with tax laws, and physical or mental health of the taxpayer. None of this information was provided from the government. No evidence of any review of any of those factors was provided by the government. Therefore, we don't know why she was granted relief, okay? Was it the omission? But she wanted it. Pardon me? We know she wanted it. Of course she wanted it, your honor, yes. And she had to fill out a form in order to get it. She had to fill out a form, but it's different, it's different. And on that form, she didn't disclose any assets. She didn't disclose any assets, your honor. I would, I would, I would say. And you're saying they didn't rely on that in making a determination that she was entitled to innocent spouse relief. They didn't rely on what she disclosed on the form that she was required to submit? There, there were, that's one factor out of many others, okay? One factor is the economic, economic hardship that would be suffered if innocent spouse relief is not granted. And economic hardship looks at your financial situation, your income and your expenses, your assets, to determine whether you have the ability to pay this tax or not. And I would submit to you that Ms. Stanley at the time did not have any beneficial ownership in any assets, or she may have had legal title, but no beneficial ownership or access to assets to pay for this liability. So whether the IRS relied on that or not, we don't know. We don't know. You can have legal title to an asset and not have the asset? Is that what you're saying? Not have a beneficial ownership of the asset, your honor. So for example, I mean, in this case, the evidence is, there's a considerable amount of evidence indicating that the taxpayer in this case, John Stacy, her ex-husband, was abusive. He controlled everything, including arts investments LLC, which is the property issue or the interest in issue. He had control of that. He gave her no access to that asset throughout this period of time, okay? Even the government in its initial complaint in this case argued that he was an alter, it was his alter ego, arts investments was his alter ego. He reported, or he opened up a bank account, the government states in their complaint, he opened up a bank account around this period of time with Wells Fargo, claiming he was the owner of this asset. Ms. Stanley got no benefit from it. She received no distributions. She received no control. She had no ability to control it. She was a manager of the LLC, but she had no access to any of that information. But we don't know, also we don't know, your honor, if the IRS even looked at that issue. They have a requirement to ask for information when it's omitted. We don't know. Okay. Instead, so the district court in this case just inferred reliance from the result that she did receive innocent spouse relief, so therefore they must have relied. The government argues the IRS necessarily relied because it made the decision granting relief. But reliance is a completely separate element. You must prove all elements of this case. Reliance is an element. If you don't prove reliance, you've effectively taken away that factor in these duty of consistency cases. The government bore the burden. It never carried it. I want to talk about the Fifth Circuit cases that discuss duty of consistency and show you how we can distinguish our case from those cases. Every Fifth Circuit duty of consistency case shares one feature. The taxpayer made a statement or reporting and received an immediate and direct benefit from the representation which the taxpayer later changed to the detriment of the government. In many of these cases, we're dealing with a deduction that was taken on a tax return which provided immediate relief which was a lower tax. Sometimes in some of these cases, the taxpayer reported a basis lower on a piece of property they received and therefore limiting the gain that they were going to pay and then later tried to increase that basis when they resold the property. That's the collection due process hearing which told the statute of limitations on collection. By statute, it does that. And then later, they claim, well, I did not really request that and therefore, therefore, the statute has run and you can't now collect from me. In those cases, reliance is apparent. There's a causal connection, okay, and the IRS acquiesced to the election or the reporting in those cases. So you don't really have to prove reliance. This case is different. When she submitted the form 8857, it's an application requesting, inviting the IRS to look at the case. And again, they have to go through this myriad of factors. And in our case, reliance was not apparent. She did not get relief simply by asking for relief on an 8857. In this case, a notice of deficiency was issued asserting that she owed $1.1 million, okay. She filed a tax work petition using the defense of innocent spouse. The IRS files an answer opposing innocent spouse. Then it goes to litigation. IRS procedures require that the innocent spouse gets involved. IRS procedures require that sometimes appeals gets involved. IRS procedures require that IRS counsel get involved and make the ultimate decision, okay. Nearly two years of litigation ensued before relief is granted. It's not automatic. And then you look at 2013-34, which teaches that the IRS reviews all facts and circumstances. So they must have done this. They must have gone through this process. And in this case, they did not produce any of that information. It would have been easy to provide the administrative file to demonstrate that reliance is here. Do you see this here which says she does not have any property. We're going to weigh this in favor of relief, okay. And by the way, under 2013-34, if you don't have an economic hardship, so that's saying, okay, let's say we did disclose it. It did not demonstrate any economic hardship. That's a neutral factor. It does not weigh against relief. It's a neutral factor. Abuse and financial control is a huge component of this decision that IRS makes. And it was there. Throughout the record, it was there. And even like I said, the IRS claims in their complaint that he used this entity as his alter ego. She had no ability to access that asset. So we don't know what the IRS relied on, okay, because no administrative file was produced. No administrative file was produced. The government has not met its burden of proving reliance. I want to talk about Emma's ownership interest for a minute. The government seeks to characterize Emma's ownership claim as a later created position. But this is not a case where the IRS was pursuing John Stacey for tax liabilities and then he transferred property to Emma. The parties were married in 2000. In 2001, they have a child. In 2004, they form an entity. They name it after the initials of their daughter. They purchase a property with that entity. The property that's at issue, the Grand Prairie property located in Dallas County. And then 12 years later, the IRS finally comes calling for John Stacey. They file a lien in 2012. It's eight years later. It's not and then accepted an interest in Arts Investments. No. The record is clear. Arts Investments was formed so that they could buy an asset, put it in that entity, have it for the benefit of their daughter, and the entity was named after their daughter. The government is not preventing manipulation by bringing this consistency claim here because there was none. Emma had a vested property right in Arts the day it was formed. And now the government is attempting to extinguish that vested property right. There's no equity in their actions. Does the panel have any questions for me? If you're done, we'll hear your rebuttal. Thank you. We'll now hear from Rachel. Wollitzer for the U.S. Thank you, Your Honor. May it please the court. My name is Rachel Wollitzer, representing the Appalachian United States. The test for the duty of consistency under Harrington consists of three simple elements. The taxpayers representing representation to the IRS, the IRS's reliance on or acceptance of this representation, and the taxpayers attempt to change her position to the detriment of the IRS. The doctrine is flexible and based on equitable concerns, equitable principles, as the Supreme Court stated in the R.H. Stearns case. Ms. Stanley represented on the form 8857 under penalty of perjury that she had no assets unless financially broke. Twelve days earlier, she had been awarded $162,000 in the Arizona District Court case relating to the couple's Arizona property. Less than two months after obtaining innocent spouse relief, she filed a sworn affidavit in the divorce case disclosing the Grand Prairie property and other assets. So clearly, she was able to make a representation and to disclose her assets when it suited her. She did not do it on the IRS form 8857 under penalty of perjury, but she did do it on her financial statements sworn in the divorce case. The IRS relied on the form 8857, again, simply by accepting it and agreeing to innocent spouse relief. The form 8857 and the requirement to complete it accurately and in good faith are preconditions to requesting innocent spouse relief. They are not just factors, like as important as domestic abuse may be, is a factor to be considered and weighed with other factors. Good faith disclosure of financial assets is not a factor. It's a precondition. It's an absolute requirement. You cannot get innocent spouse relief without filling out that 8857 under penalty of perjury. Stanley's arguments regarding what the IRS may have done or what they investigated or the extent of their inquiries or deliberations are speculative. In fact, it's just as simple as that. She submitted the 8857, failing to disclose her assets, and the IRS granted a million dollars in innocent spouse relief. After the limitations period... He boils it down to the IRS's failure to provide evidence of reliance on her representation. I'm assuming she fills out this form where she represents what her assets are. It's based on that form that a determination was made that she should get innocent spouse relief. Does the IRS send some confirmation or some notice that the innocent spouse relief is being granted? This was submitted during the TAPS court litigation. They didn't end up litigating the innocent spouse issue because the IRS stipulated to an agreed judgment granting her the innocent spouse relief. There's no separate form indicating that the IRS... We examined your form requesting spouse relief. Correct. Based on your submissions, we're granting the relief. Correct, Your Honor. There's no form like that. Right. Honestly, the innocent spouse determination in a TAPS court case is a de novo determination based on the record and not based on the administrative record. Generally, the IRS's deliberations and considerations in making such determinations, it's not a proper... It's not this... I'm assuming someone decided that she was entitled to innocent spouse relief. Pardon me? I'm assuming someone decided she was entitled to it. Yes. Well, like I said, it was done in the context of the TAPS court litigation and the stipulation was then insured into by the counsel. You mean an IRS attorney would have agreed to it? Is that what that means? Yes, Your Honor. As I said, none of the cases talk about an investigation into the scope of the case. The taxpayer claimed a deduction, IRS accepted the return, and then later the taxpayer is trying to take an inconsistent position that is inconsistent with that deduction. And then for the CDP hearing, the taxpayer submitted a CDP hearing request, the IRS accepted it, and then the taxpayer is later claiming that, or the estate in that case, which was the Holmes case, that the CDP hearing request was untimely. So if she had said she owned that property, would that have changed some things in terms of whether they allowed her to not have to give taxes? It's not so much what if she had disclosed it. It's more that she didn't disclose it, and good faith disclosure is a requirement for obtaining relief. So she wouldn't have gotten relief if she hadn't submitted a good faith disclosure of her assets. But if the disclosure is different, you're saying that doesn't matter? Doesn't the disclosure matter? It matters. Well, we can't go back in hindsight and say, yes, they would have granted it based on this asset. No, they wouldn't have. Bottom line is that she did not disclose, she did not make good faith disclosure on her form signed under penalty of perjury, and that is a prerequisite for obtaining relief. So she was not entitled to the relief, regardless of any other factors. So Stanley is a stop from changing her initial position on the form 80 of 57 that she did not have any assets. In the alternative, there is an alternative basis for determining that Ms. Stanley has no interest in the property. The federal tax liens for Mr. Stacy's liabilities attach to all of the Grand Prairie property because the property is Mr. Stacy's sole management community property under Texas law, which applies because Stacy and Stanley resided in Texas when they acquired the property. The federal tax liens reach all, or I'm sorry, so the sole management community property under Texas law is where the spouse has all of the management and control and disposition of the property. Ms. Stanley testified at her deposition that she had nothing to do with the property and that Mr. Stanley took care of all of it. She went into detail about how, pardon me, to find the discussion of that testimony. Stanley testified at her deposition that she was not involved with arts or the purchase of the Grand Prairie property, which was subject to Stacy's sole control. So the property is sole management community property under Texas community property law, and as such, the federal tax liens attach to all of it. Now, Stanley argues that the record does not establish that the property, she argues this in her brief, that the record does not establish that the property was Stacy's sole management community property, but she only cites her formal ownership interest in arts and tax documents reflecting recognition, even if only on paper, of her status as an equity owner. These formalities are insufficient to establish sole or even joint management status, and it contradicts her testimony that she had nothing to do with this property. But even if the property was joint management community property under Texas law, the federal tax liens would still attach to all of it. So therefore, either under the duty of consistency or under general federal tax lien law and Texas community property law, the government is entitled to the disputed proceeds based on Mr. Stacy's tax lien interest. Does the panel have any questions? Okay. Thank you, Your Honor. Thank you. We'll now hear the rebuttal. Thank you, Your Honors. Judge Graves, you asked the question about a person makes that decision on whether to grant relief or not. Where is the testimony of that person? Why wasn't that person's affidavit produced in this litigation? That person, whomever it may be, was not even disclosed in the initial disclosures in this case. But there's no contest. It's not contested. She got the innocence. She did, but Your Honor, it's not simply as in those other cases. It's not simply you ask for it and you receive it. You ask for it, there's an investigation that occurs, and somebody decides, wait, looking at all the factors to grant relief or not. That's true. And this is an equitable principle. The duty of consistency is an equitable principle. It's not strict liability. What if you inadvertently omitted something? Are you saying, and you got innocence past relief, are you saying that your relief is nullified because you inadvertently omitted something? You can't say that. That's unreasonable. If you look at bankruptcy cases, when you list things on your property schedules or you fail to list those things on your property schedules, and you later determine you failed to list things on the property schedules, you're not denied a discharge automatically. There's an inquiry made as to whether it was inadvertent or willful. Similarly here, she was granted relief. It was an inadvertent omission. Are we just going to nullify it based on strict liability, basically? Judicial estoppel is another one. If you take a position in one court and then you take another position in another court, well, was it inadvertent that you took the position or was it a mistake you took the position? There's an inquiry into that. So very similarly here, this is- Including it on that form that she has for the innocence voucher. I think she was under pressure. She had no access to assets, Your Honor. The record is clear of that. There were other things that she was awarded in the- And I hear that, but that sounds to me like, well, I'm not saying I didn't know about it. All I'm saying is I don't have any control over it. I don't have any access to it. It's all his. It's his alter ego. It's not mine. So I'm not listing it. Well, I don't know if that was the case or not. My client says it wasn't. She filled it out the best she could at the time with what she knew at the time. At the time, the divorce court had not awarded property to either party. She had title, but she had no equitable ownership. She didn't know if she was going to receive it in the divorce. All right. Well, that's different from inadvertently leaving it off. She made a conscious decision that wasn't hers and she had no access to it. Those are two different things. Yes, Your Honor. I agree. I agree. Okay. Once again, equitable principles dictate that they prove reliance. If you look at in the Fifth Circuit, there's a similar- It's not a duty of consistency case, but it's an equitable doctrine case involving alter egos, the Oxford capital case. In that case, the IRS served levies on a parent corporation based on subsidiaries' tax liabilities. They served levies because they saw that they were intermingling funds. Monies owed to the subsidiary were being paid to the parent. They served levies. A wrongful levy suit is filed. This court said, that's not enough. You've got to prove a more direct connection because that's what alter ego requires. In this instance, we don't have any evidence in this case that there was any reliance whatsoever or lack of reliance. They need to prove that. It would have been very easy to prove they didn't provide the administrative file, never provide it. We requested the administrative file of discovery, not provide it. So to say that this is a strict liability case, you're eliminating completely the element of reliance. If that's the case, then you just have a statement, and then you have harm to the government, and that's the two factors, then, of that equitable doctrine. I don't think that's the case. I don't think that's what this court wants to do. I think you've got to prove reliance. So with regard to Arizona law, I think the parties have missed the boat in this one, both sides. In my reflection and preparation for the oral argument, it's a fact that the parties were divorced in 2011. The property was not divided. So when the divorce occurred, community property regime ended. So no longer community property after that point. The law generally provides, in that instance, whether it's Arizona or Texas, that then the owner, the spouses become tenants in common. So no longer does community property apply. You have a question, Your Honor? Okay. No question? No? Okay. Thank you. Thank you, both sides. We appreciate your arguments, and we will consider this. We will decide this case, and this panel is done with our oral argument.